## CORPORATION COMMISSION OF OKLAHOMA ET AL. *v.* LOWE, DOING BUSINESS UNDER THE TRADE NAME OF CAPITOL HILL GIN COMPANY.

No. 454.  Argued April 29, 1930.—Decided May 19, 1930.

Messrs. *S. P. Freeling* and *E. S. Ratliff* for appellants.

*Mr. Robert M. Rainey*, with whom *Messrs. Streeter B. Flynn* and *Alger Melton* were on the brief, for appellee.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

This suit was brought by the appellee, William Lowe, to restrain the Corporation Commission of Oklahoma from issuing a license to the Farmers Union Coöperative Gin Company to construct and operate a cotton gin at Packingtown, Oklahoma. The appellee operates a cotton gin at Capitol Hill, Oklahoma City, under a license issued by the Corporation Commission, and the ground of the suit was that the issuing of a license to the Farmers Union Coöperative Gin Company, in view of the privileges with which that company would be able to operate under the applicable statute of Oklahoma, would constitute an injurious invasion of the appellee's business and an unreasonable discrimination against him, thus depriving him of his property without due process of law and denying him the equal protection of the laws in violation of the Fourteenth Amendment of the Federal Constitution.

The District Court, composed of three judges, entered a final decree granting a permanent injunction against the issuing of the license, and the defendants in the suit, the Corporation Commission and the Farmers Union Coöperative Gin Company, have brought this appeal.

Upon the hearing in the District Court there was an agreed statement of facts, from which it appears that the appellant company is a domestic corporation of Oklahoma, organized under Article XIX of Chapter 34, Compiled Statutes of Oklahoma of 1921; that the company filed with the Corporation Commission an application for a license to operate a cotton gin as a public utility at Packingtown, a part of Oklahoma City; that the place where it was proposed to locate the gin is about two and one-half miles from appellee's gin at Capitol Hill; that the appellee also operates a cotton gin at Wheatland, Oklahoma, about ten miles from the proposed site of the gin of the appellant company; and that these gins of the appellee and of the appellant company would be in the same cotton producing territory and would be in competition. It was also agreed that the appellee had filed with the Corporation Commission his written protest against the granting of the license to the appellant company; that the Corporation Commission had heard the application and considered the objection, and that unless restrained by the court the Corporation Commission would issue the license to the appellant company and its proposed gin would be put in operation.

The bill of complaint alleged that cotton gins are public utilities under the law of Oklahoma and that the Corporation Commission is vested with authority to regulate them and to fix the rates, charges, and rules to be observed in their operation. There is no controversy upon these points. The dispute grows out of the privileges accorded by statute to the appellant company as a corporation formed to conduct business upon a coöperative plan. Compiled Statutes of 1921, secs. 5637-5652, as amended in 1923. The particular statutory provision involved is found in section 5648, as follows:

" Dividends and profits—reserve fund. The directors, subject to revision by the stockholders, at any general or

special meeting lawfully called, shall apportion the net earnings and profits thereof from time to time at least once in each year in the following manner:

"(1) Not less than ten per cent thereof accruing since the last apportionment shall be set aside in a surplus or reserve fund until such fund shall equal at least fifty per cent of the paid up capital stock.

"(2) Dividends at a rate not to exceed eight per cent per annum, may, in the discretion of the directors, be declared upon the paid up capital stock. Five per cent may be set aside for educational purposes.

"(3) The remainder of such net earnings and profits shall be apportioned and paid to its members ratably upon the amounts of the products sold to the corporation by its members, and the amounts of the purchases of members from the corporation: provided, that if the by-laws of the corporation shall so provide the directors may apportion such earnings and profits in part to nonmembers upon the amounts of their purchases and sales from or to the corporation."

The precise contention of the appellee is that under this statute, if a license is granted to appellant company, it will be able to carry on its business on more favorable terms than are available to the appellee, since, it is said, it "will be compelled, although engaged in a regulated public business as a public utility, to grant refunds and rebates to its patron members and will have the right and privilege of making such refunds and rebates to non-member patrons upon the amount of their patronage." The appellee argues that he is prohibited from making refunds and rebates, and is compelled, in the performance of his public duty, to charge rates fixed by the Corporation Commission, which will compel him to compete with appellant gin company upon unequal terms."

In *Frost* v. *Corporation Commission of Oklahoma,* 278 U. S. 515, the Court concluded that one who had complied with the statutes of Oklahoma and had obtained a permit to operate a cotton gin, held a franchise which constituted a property right, and that while this right did not preclude the State from making similar valid grants to others, it was an exclusive right as against attempts to operate a competing gin without a permit or under a void permit. In this view, it was decided that a state statute which permitted an individual to engage in such a business only upon his first showing a public necessity, but allowed a corporation to engage in the same business, in the same locality, without such a showing, discriminated against the individual in violation of the equal protection clause of the Fourteenth Amendment. The appellee invokes the principle of this decision upon the ground that in the present case he will be subject, under the state law, to an unjustifiable discrimination in the competition which will ensue if a license is granted to the appellant company.

The appellants take issue with this contention. They urge, in substance, that at best the appellee's complaint is premature, that he has not yet suffered, and does not know that he will suffer, any injury as a result of the statutory provision of which he complains. But if the appellant company, by virtue of the statute, is placed on a more favorable basis in the conduct of its business, by being able to hold out to its patrons the prospect of returns which the appellee by reason of the law binding upon him cannot offer to his patrons, it is apparent that the injury of this discrimination may be inflicted at the outset.

Assuming that the complaint is not premature in this respect, and that the discrimination, if it exists under the law, would be immediately effective, we are brought to

the question whether the appellee is prevented by the law of Oklahoma from offering, and actually making, a distribution of profits to his patrons similar to that permitted by the statute in the case of the appellant company. The appellee is an individual, transacting business as such, as his bill of complaint shows, and he is not bound by provisions governing corporate organization. He must conduct the business of cotton ginning in conformity with the law of the State, but he may deal with the profits of that business as he sees fit, if he does not act contrary to that law. The question is not as to the mere economic advantage or disadvantage to an individual owner of a cotton gin of a distribution of net earnings upon a basis similar to that permitted by the statute in the case of the appellant company, or of the mere disinclination of an individual owner to make such a distribution. The question is whether the appellant company has a privilege under the statute in this respect which the law of the State refuses to the appellee and hence the appellee is denied the equal protection of the laws.

The statutes of Oklahoma characterize the business of cotton ginning as a "public business," and provide that the Corporation Commission "shall have the same power and authority and be charged with the duty of regulating and controlling such cotton gins in all matters relating to the performance of public duties and the charges therefor, and correcting abuses and preventing unjust discrimination and extortion, as is exercised by said Commission as to transportation and transmission companies and shall have the same power to fix rates, rules, charges and regulations to be observed by such person or persons, or corporation, operating gins, and the affording of all reasonable conveniences, facilities and service as it may impose as to transportation or transmission companies." Com-

piled Statutes of Oklahoma of 1921, secs. 3712, 3715, as amended. Under this authority, the Corporation Commission establishes rates and charges for the ginning of seed cotton, and it is agreed that these rates are applicable to all engaged in the cotton ginning business for the general public. There is no basis for an assumption that there will be any difference in rates and charges as applied to the appellee and the appellant company for similar services.

With respect to the distribution of net earnings, the Corporation Commission and the appellant company have argued "that there is no law in the State of Oklahoma against rebates," and, further, that the so-called "patronage dividend," or a ratable distribution of net earnings to patrons upon the basis of their purchases and sales, as contemplated by the statute in question, "is not a rebate as embraced within any definition of the word as heretofore used." Apart from terminology, the important point is whether, under the law of Oklahoma, appellee may do in his business what the appellant is permitted to do, in distributing net earnings. The appellants, both the Corporation Commission and the company, say that he may.

The question was distinctly raised upon the oral argument of the present case before this Court. Not only was the appellee unable to bring to our attention any provision of the law of the State, or any regulation of the Corporation Commission, denying to the appellee the privilege of distributing net earnings to his patrons upon the basis of purchases and sales in a manner similar to that provided in the statute relating to the appellant company, but the counsel for the Corporation Commission in response to direct inquiry stated to the Court that he knew of no such provision of law or regulation of the

Corporation Commission. See *Clark* v. *Poor,* 274 U. S. 554, 557, 558.

It was incumbent upon the appellee in invoking the protection of the Fourteenth Amendment to show. with convincing clarity that the law of the State created against him the discrimination of which he complained. An infraction of the constitutional provision is not to be assumed. On the contrary, it is to be presumed that the State in enforcing its local policies will conform its requirements to the Federal guarantees. Doubts on this point are to be resolved in favor of, and not against, the State. *Grenada County Supervisors* v. *Brogden,* 112 U. S. 261, 269; *St. Louis, Southwestern Railway Company* v. *Arkansas,* 235 U. S. 350, 369; *Hendrick* v. *Maryland,* 235 U. S. 610, 621; *Pullman Company* v. *Richardson,* 261 U. S. 330, 340; *South Utah Mines* v. *Beaver County,* 262 U. S. 325, 331.

In the present instance, the authority given to the appellant company by the statute with respect to the distribution of net earnings may be regarded as a declaration that such a distribution of net earnings among patrons of cotton gins is not contrary to, but in accord with, the policy of the State, and, until the contrary appears, the assumption must be that in giving effect to its policy, the State will not permit an injurious and unreasonable discrimination. If, hereafter, in the regulation of his business, the appellee is subject to such a discrimination in violation of his constitutional rights, he will have his appropriate remedy.

The decree of the District Court is reversed and the cause remanded with direction to dismiss the bill of complaint.

*It is so ordered.*