2000 OK CIV APP 41

**Melissa Ann WATTS, Plaintiff/Appellee,**

v.

**William F. "Gerald" HENSLEY, Defendant/Appellant.**

**No. 92,099.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Nov. 23, 1999.

Certiorari Denied Feb. 29, 2000.

Joe E. White, Jr., Greg S. Wilson, White Law Firm, Oklahoma City, Oklahoma, For Plaintiff/Appellee.

M. Jean Holmes, Michael James King, Winters, King & Associates, Inc., Tulsa, Oklahoma, For Defendant/Appellant.

BUETTNER, Presiding Judge:

¶1 Defendant/Appellant William F. "Gerald" Hensley (Hensley) appeals the entry of a protective order against him. Plaintiff/Appellee Melissa Ann Watts, a teacher, sought the protective order after Hensley, a school board member, angrily confronted her at school. Because we find no evidence of a course of conduct to establish harassment, we hold the trial court abused its discretion in entering the protective order. We therefore reverse and remand with instructions to dismiss.

¶ 2 The evidence indicates that on May 1, 1998, Hensley arrived at the Pretty Water School to pick up his children and a friend of his daughter. Hensley entered the gymnasium and noticed his daughter and her friend were crying. Hensley confronted Watts, who taught 7th grade and P.E., and asked what had caused the girls to cry. Hensley, Watts and the girls then went into the gymnasium office at Watts' direction. Watts closed the door to the office. Hensley yelled at Watts and at one point stated "I'm boiling." Hensley testified she took this statement to be a threat.

¶ 3 Watts told Hensley she needed to go to a meeting. Watts testified that Hensley told her "you're not going to the IEP meeting until I know what's going on." Watts left Hensley and the girls in the office and went to the school's main office. Watts returned a few minutes later with the school superintendent, Paulette Barnes. Watts stood outside the gymnasium office behind Barnes while Barnes spoke with Hensley. Barnes testified that Hensley pointed his finger at her and yelled. Watts and Barnes then went on to the IEP meeting. Watts next saw Hensley the following Monday at a meeting previously scheduled with Hensley's wife. Watts testified that she did not feel threatened by Hensley at that meeting and that she made no effort to leave when she saw Hensley. The next night, Tuesday, Watts went to the school board meeting and asked Hensley to resign. Hensley did not resign and Watts filed her motion for a protective order the next week.

¶ 4 In granting the protective order, the trial court ordered Hensley "not to abuse, injure, visit with, assault, molest, or otherwise interfere with" Watts. The order further ordered Hensley not to threaten Watts and to "remain away from (Watts) wherever she may be at any time." The protective order further ordered Hensley to attend and complete a DHS anger management course and to enroll in the Oklahoma State School Board Association's new school board member course. The order provided that:

> once (Hensley) has completed the anger management course and the orientation session for new school board members,

understands his role as a school board member and how he has some limitations on him in that regard, can articulate such to the court that he has completed those other items set forth herein, and has completed the payment of costs in the amount of $94.00 in this action, which shall be paid by August 31, 1998, (Hensley) may then make application to this Court that this order be removed. Such Order shall then be removed by this Court, assuming (Watts) has moved, is teaching elsewhere, and there has been no violation of this Order.

The trial court later awarded Watts $6,766.00 in attorneys fees and $118.00 in costs pursuant to 22 O.S.1991 § 60.4(D)(7) and (8). The trial court stayed the protective order and the fees and costs award during this appeal.

¶ 5 A trial court's decision to enter a protective order will not be reversed absent an abuse of discretion. *Baker v. Baker*, 1995 OK CIV APP 111, 904 P.2d 616.

¶ 6 Protective orders are governed by the Protection From Domestic Abuse Act. 22 O.S.1991 § 60.1 *et seq.* The Act provides that "a victim of domestic abuse, a victim of stalking, a victim of harassment, ... may seek relief under" the Act. 22 O.S.Supp.1992 § 60.2(A). Watts filed her petition for a protective order alleging Hensley had harassed her. "Harassment" is defined under the Act as:

> a knowing and willful *course or pattern of conduct* by an adult ... directed at a specific person which seriously alarms or annoys the person, and which serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial distress to the person. 'Harassment' shall include, but not be limited to, ... fear of death or bodily injury." (Emphasis added.).

¶ 7 Although Watts argues that she had three encounters with Hensley—the "first" altercation in the gymnasium, a "second" altercation when Barnes returned to the gymnasium with Watts, and "third," the meeting with Hensley and his wife the fol-

lowing Monday—there is a failure to prove a course or pattern of harassment. The incident in the gymnasium on May 1, 1998 was a single event. In addition, Barnes and Watt testified that Watt stood behind Barnes and did not communicate with Hensley when the two returned to the gymnasium. Finally, the Monday morning meeting was scheduled prior to the May 1, 1998 incident and Watts testified she was not frightened at that meeting. Accordingly, an essential element of harassment, "a knowing and willful course or pattern of conduct," is absent from the evidence in the instant case. We therefore find that the trial court abused its discretion in entering a protective order under the instant facts.

■ ¶ 8 Hensley next alleges the trial court erred in refusing to admit evidence of ongoing disputes between Hensley, Barnes and Watts regarding school policy. Hensley sought to admit such evidence to show bias on the part of Watts in filing her petition for a protective order. Whether to admit evidence is left to the trial court's discretion. *Holm–Waddle v. William D. Hawley, M.D., Inc.*, 1998 OK 53, 967 P.2d 1180. A history of disputes regarding school policy and Hensley's reasons for running for the school board are not necessarily relevant to proving a course or pattern of harassment in order to enter a protective order. We find no abuse of the court's discretion in refusing to admit this evidence.

¶ 9 Hensley's next assertion of error is that the trial court abused its discretion in ordering him to complete an anger management course and in ordering him to take an Oklahoma State School Boards Association course. Hensley asserts that Watts did not request these provisions in her petition for protective order and that Hensley therefore had no notice that they might be ordered. Hensley also asserts that the Act allows for an order of counseling only in domestic abuse cases. Watts counters that the provision for counseling in the Act, 22 O.S.1991 § 60.4(E), should apply to protective orders entered for harassment as well as domestic abuse. Be-

cause we reverse the protective order, we need not reach this issue, except to note that § 60.4 provides that:

> After notice and hearing, protective orders authorized by this section may require the plaintiff or the defendant or both to undergo treatment or participate in the counseling services necessary to bring about cessation of *domestic abuse* against the victim....

(Emphasis supplied.) [1]

■ ¶ 10 Hensley next asserts the trial court erred in refusing to disqualify Watts counsel. Hensley informed the court, in a motion to disqualify, that prior to hiring his trial counsel, Hensley had contacted an assistant of Watts' counsel, Joe E. White, Jr. The assistant interviewed Hensley and agreed to represent him. Hensley chose a different attorney and White was hired by Watts. There is sufficient evidence which, if believed by the trial court, would support denial of the motion to disqualify. We see no abuse of discretion in the denial of the motion.

¶ 11 Hensley's final assertion of error addresses the award of attorney fees. Because we reverse the entry of the protective order, we likewise reverse the award of attorney fees and costs. Title 22 O.S.1991 § 60.4(7) and (8) provide that a protective order may include an award of attorneys fees. This court has determined that those provisions do not allow for an attorneys fee award to a successful defendant in a protective order case. *Alford v. Garzone*, 1998 OK CIV APP 105, 964 P.2d 944. Likewise, following reversal of the protective order, there is no longer an order which may provide for fees and costs. Accordingly, we reverse the award of attorneys fees and costs.

¶ 12 The evidence in the instant case shows an unfortunate incident, but does not establish a course or pattern of harassing conduct which is a necessary element for issuance of a protective order under § 60.4. As a result, the protective order was entered in error.

1. " 'Domestic abuse' means any act of physical harm, or threat of imminent physical harm which is committed by an adult, ... against another adult, emancipated minor or minor child who are family or household members...." 22 O.S. Supp. 1996 § 60.1(1).

Consequently we REVERSE and REMAND with instructions to dismiss.

¶ 13 JOPLIN, J., concurs.

GARRETT, Judge, specially concurring:

¶ 1 I concur because a single event cannot be a "course or pattern of conduct."